UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DRAKEN INTERNATIONAL, LLC,

            Plaintiff,

v.

DENEL SOC LTD d/b/a DENEL AERONAUTICS,

            Defendant.

Civil Action No.: _____

## COMPLAINT

Plaintiff Draken International, LLC ("Draken"), by and through its undersigned attorneys, hereby files this Complaint against defendant Denel SOC Ltd d/b/a Denel Aeronautics ("Denel") and alleges as follows:

## INTRODUCTION

1. This action concerns Denel's failure to honor its obligations under an October 31, 2017 aircraft sale and remote support services agreement (along with all amendments thereto, the "Agreement").

2. In October 2017, Draken contracted with Denel for the delivery of twelve Cheetah model aircraft. The Agreement provided for a phased delivery schedule ensuring that all aircraft would be delivered within 24 months. The

Agreement also included detailed specifications for the aircraft's technical requirements and delivery condition.

3. Denel has repeatedly failed to meet its obligations under the Agreement. Seven years after the parties executed the Agreement, Denel has delivered only three of the twelve aircraft ordered by Draken. Denel has caused extensive delays and cost overruns preventing it from delivering the aircraft on time. In addition, none of the delivered aircraft has met the technical and condition requirements under the Agreement.

4. In an attempt to remedy these deficiencies and allow Denel to fulfill its obligations, Draken agreed to significant extensions to the original delivery schedule in exchange for clear contractual language entitling Draken to liquidated damages if Denel's extensive delays continued unabated.

5. Notwithstanding these concessions, Denel failed to meet the delivery schedule and provide any aircraft that satisfy the performance and condition requirements under the Agreement.

6. Denel's material breach of the Agreement and extensive delay has caused significant damages to Draken, including compensatory, consequential, and liquidated damages as stipulated by the parties. At the same time, Denel has had unfettered access to millions of dollars in advance payments from Draken for nearly seven years without delivering the aircraft for which those advance payments were made. Draken brings this action to enforce its rights

and recover the significant damages, including interest, that Draken has incurred as a result of Denel's material breach.

## THE PARTIES, JURISDICTION, AND VENUE

7. Draken International, LLC is a Delaware limited liability corporation. Draken is one of the world's leading providers of adversary training services to military and defense industry customers, including the U.S. Air Force and Marine Corps, the U.K. Royal Air Force and Royal Navy, and forces across the NATO alliance and their partners.

8. The sole member of Draken International, LLC is Draken Holdings, LLC ("Draken Holdings"), a Delaware limited liability corporation.

9. The sole member of Draken Holdings is Draken Holdings Trust ("Holdings Trust"), a Utah traditional trust. The trustee of Holdings Trust is the Bank of Utah, a Utah corporation with its principal place of business in Ogden, Utah.

10. Denel is a South African state-owned company with its principal place of business located at Denel Kempton Park Campus, Atlas Road, Bonaero Park, 1622, South Africa.

11. This Court has jurisdiction over this matter and the parties under 28 U.S.C. § 1332(a)(1), and Section 10.4 of the Agreement, which provides that "[e]ach of the Parties agree that this Agreement shall be enforceable in the federal and state courts located in the Middle District of Florida and Polk

County Florida, respectively, and for such purpose hereby consents and irrevocably submits to the jurisdiction of such courts . . . . Agreement § 10.4.

12.  Diversity jurisdiction exists because Defendant is a citizen of South Africa, Plaintiff is not a citizen of South Africa but is a Delaware limited liability corporation; Plaintiff's sole member, Draken Holdings, is a Delaware limited liability corporation; the sole member of Draken Holdings is Holdings Trust, a Utah traditional trust whose trustee is the Bank of Utah, a Utah corporation with its principal place of business in Ogden, Utah; and the amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

13.  Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

### A.    Draken and Denel Enter into The Agreement

14.  On October 31, 2017, Draken and Denel entered into the Agreement, pursuant to which Denel agreed to deliver twelve Denel aircraft of the model Cheetah to Draken.  *See* Ex. A.[1]  The aircraft were to be delivered pursuant to a phased delivery schedule to be completed by November 2020.

15.  The Agreement included detailed requirements for the condition of the aircraft to be delivered and all required parts to be included with each

---

[1] Certain confidential information unrelated to the provisions at issue in this litigation has been omitted from the version of the Agreement attached hereto.

4

aircraft. Denel specifically represented and warranted that each aircraft delivered would meet the performance characteristics and be in the condition specifically described in the Agreement.

16. The total purchase price under the original agreement was $29,200,000. Draken was obligated to pay a $500,000 good faith deposit (the "Deposit") within 30 business days of executing the Agreement, and an additional $9,000,000 (the "Advanced Payment") within 30 business days of the parties' meeting certain regulatory and government requirements governing the export of the aircraft from the Republic of South Africa to the United States and negotiating a mutually acceptable support agreement. Draken paid the Deposit in December 2017 and paid the Advanced Payment in March 2018.

17. In addition to the Deposit and the Advanced Payment, Draken was required to transfer $1,641,666.67 per aircraft upon delivery of each aircraft, for a total of $19,700,000.

18. The Agreement makes clear that "time shall be of the essence for all events contemplated." Agreement § 10.12. To that end, the Agreement set forth a detailed delivery schedule providing for the phased delivery of the twelve aircraft to be delivered in six batches, beginning four months after the Advanced Payment was made and to be completed within 24 months from the Effective Date. Agreement § 3.1.

5

19. Given the importance that aircraft used in Denel's operations meet strict technical requirements, Denel represented and warranted that each aircraft delivered would meet extensive performance characteristics and condition requirements. Agreement § 6.7. Those requirements included that all aircraft be delivered in "Airworthy" condition, meaning that such aircraft:

  (i) conforms to its type design, is in a condition for safe operation, is current with all required inspections and overhauls, and possesses non-expired life-limited parts;

  (ii) is delivered with all Aircraft Documents, in addition to any other documents of a like nature related to such Aircraft or the delivery thereto, which may be reasonably requested by the Buyer that are in possession of or may be produced with commercially reasonable efforts by the Seller.

*Id.* at Schedule 1.

20. The Agreement further provided that Denel delivered certain specified items for each aircraft (the "Ordered Parts"), and that such items were to be installed by Denel to Draken's satisfaction. Agreement § 4.1. Such Ordered Parts included, among other things, ejection seats of specified makes and models for each aircraft.

21. The Agreement also gave Draken an express termination right by providing written notice to Denel. Upon receiving such written termination, Denel is obligated to promptly "refund a pro rata portion of the Deposit and Advanced Payment to the Buyer corresponding to the number of Aircraft that have not yet been delivered." *Id.* § 9.2. In the event of a dispute, the prevailing

party in such dispute shall also "be entitled to its reasonable attorneys' fees and expenses incurred in addition to any other relief to which it is entitled." *Id.* § 10.10.

### B.     Denel Fails to Deliver Aircraft in Airworthy Condition

22.    Notwithstanding the strict delivery conditions and timeline agreed by the parties, Denel has failed to deliver aircraft in accordance with the specifications under the Agreement.

23.    Between October 2017 and September 2020, Denel delivered only two aircraft, neither of which was delivered on time or in Airworthy condition. Among other deficiencies, Denel failed to deliver the aircraft complete with ejection seats, notwithstanding its clear obligation to deliver such Other Parts and ensure that the aircraft were delivered complete with "egress systems." Agreement at Schedule 1.  Denel also failed to provide remote technical support and operation and maintenance of each aircraft as required under the Agreement.  Agreement § 1.2.

24.    On January 30, 2018, the parties executed an amendment to the Agreement (the "First Amendment") to amend certain provisions governing Draken's purchase of aircraft parts from Denel.  *See* Ex. B.  This amendment allowed Draken to order certain parts from third parties other than Denel and discount the cost of such parts against the purchase price under the

Agreement. This amendment was necessary given Denel's failure to provide several of the "Other Parts" encompassed by the Agreement.

### C. The Parties Execute a Further Revised Agreement with Clear Consequences for Continued Delay by Denel

25. On October 6, 2020, the parties executed a second amendment to the Agreement (the "Second Amendment") to amend the phased delivery schedule for the remaining aircraft. *See* Ex. C. As part of the amendment, the parties agreed to amend the total purchase price for the twelve aircraft to $35,238,028. The Second Amendment further provided that delivery of the remaining aircraft would be completed in four separate phases. By the time the parties executed the second amended agreement, Draken had paid a total of $12,783,333 without receiving a single aircraft in Airworthy condition.

26. The Second Amendment amended the "Time is of the Essence" provision to read, in relevant part:

> Time is of the Essence. Time is of the Essence. Unless specifically stated to the contrary herein, time shall be of the essence for all events contemplated hereunder. In the event of a delay to any of the deliveries and items listed in section 3.10 Inspection and Acceptance Summary Table (as amended in the "Second Amendment") for which Seller is solely responsible, ***Seller shall be assessed and pay (or refund as applicable) as liquidated damages at 5% of the value item for every 14 days of delay for each and every item that is determined to have missed the delivery dates in the aforementioned table capped to an aggregate value of 15% of the value of the grand total price of the phase which it is in***. . . .

Agreement § 10.12.

### D. Denel Fails to Meet Its Obligations Under the Agreement

27. Notwithstanding its clear obligation to timely deliver all remaining aircraft and ensure their Airworthy condition, Denel failed to honor its obligations under the Agreement. After executing the Second Amendment in October 2020, Denel delivered just one additional aircraft, which, like the first aircraft delivered, failed to meet several of the Agreement's express performance and condition requirements.

28. Given the extensive issues with Denel's performance, the parties agreed to defer further deliveries pending discussions of a potential resolution.

29. Over the course of such discussions, Denel has repeatedly stalled and raised pretextual hurdles to advancing the discussions. This continued delay has only aggravated Draken's already significant damages from Denel's failure to perform under the Agreement.

30. In addition to breaching its delivery obligations, Denel has benefited from its access to millions of dollars in advanced payments that Draken paid in 2017 and early 2018. The loss of use of those funds has caused material damages to Draken.

31. Under Sections 9.2 and 10.12, Draken is entitled to an immediate payment of a pro rata portion of the Deposit and Advanced Payment of

$7,125,000 and liquidated damages of 15%. Draken is also entitled to consequential and incidental damages arising out of Denel's material breach.

## FIRST CLAIM FOR RELIEF
(Breach of Contract Against Denel)

32. Draken realleges and incorporates the allegations in paragraphs 1 through 31 as if fully set forth herein.

33. The Agreement is a valid and enforceable contract between the parties.

34. Denel agreed to sell Cheetah aircraft to Draken pursuant to the terms of the Agreement.

35. Denel breached the Agreement by failing to deliver aircraft in accordance with the specified delivery schedule or the detailed performance and condition specifications included therein.

36. As a result of Denel's breach, Draken has suffered substantial damages, including but not limited to compensatory, consequential, and liquidated damages.

37. All conditions precedent to the filing of this action have occurred or been performed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff pays for judgment in its favor against Defendant as follows:

1. Awarding damages to Draken, including without limitation:

10

    a.    All damages sustained by Draken by reason of Denel's breach of the Agreement, including lost profits, lost sales, liquidated damages as mandated by the Agreement, or other monetary damages;

    b.    Prejudgment interest on all sums awarded to Draken;

2.    An award to Draken for its attorney's fees and expenses, including pursuant to Section 10.10 of the Agreement; and

3.    Such other and further relief as the Court deems just and equitable.

## JURY TRIAL DEMAND

Draken demands trial by jury on all claims so triable as a matter of law.

Dated on this 19th day of August, 2025.

                    CRAIG S. WALDMAN, ESQ.
                    (*Lead Counsel*)
                    (motion for special admission to be filed)
                    Email: CWaldman@stblaw.com
                    JACOB LUNDQVIST, ESQ.
                    (motion for special admission to be filed)
                    SIMPSON THACHER & BARTLETT LLP
                    425 Lexington Avenue
                    New York, NY 10017
                    Telephone: 212-455-3348
                    Email: jacob.lundqvist@stblaw.com

                    and

*/s/ John N. Muratides*
JOHN N. MURATIDES, ESQ.
Florida Bar. No. 332615
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
401 East Jackson Street, Suite 2100
Tampa, Florida 33602
Telephone: (813) 223-4800
Facsimile: (813) 222-5089
Primary: jmuratides@stearnsweaver.com
Secondary: lwade@stearnsweaver.com

#13987334 v1